**FINEFROCK v MUSKINGUM WATERSHED CONSERVANCY DISTRICT et**

Ohio Appeals, 5th Dist, Stark Co

Decided June 11, 1937

Hart, McHenry & Jones, Canton, for appellant.

Wilkin, Fisher & Limbach, New Philadelphia, for appellees.

Earl D. Ruetz, Massillon, Sherlock H. Evans, John V. Hammersmith, Massillon, and Elson Wefler, Massillon, for C. H. Whitman.

**OPINION**

By MONTGOMERY, PJ.

The appellant, Charles O. Finefrock, and the appellees, The Muskingum Watershed Conservancy District and others, are engaged in a sham battle. They join in asking this court to express commendation of their tactics and of their well executed maneuvers. They seem to entertain no doubt as to whether they have chosen well in selecting this particular field for their operations. They seem to entertain no doubt as to the soundness of the strategy which they have devised.

Having first presented themselves before the Common Pleas Court and having obtained its approval, they now present themselves before us, seeking additional approval. The reason for this is not readily apparent, but it may be presumed that they entertain the hope that such approval would not hereafter be challenged. An examination of the pleadings and of the briefs justifies these observations.

Finefrock filed his petition in the lower court asking for a declaratory judgment as to his rights, status and other legal relations in respect to several questions propounded. The Muskingum Watershed Conservancy District and its directors filed an answer in which they suggested answers to the questions and joined in the prayer for a declaratory judgment. The trial court granted the joint prayer, and to the questions propounded, gave the answers suggested by the defendants. From its judgment, an appeal was perfected to this court on questions of law. The recited assignments of error are: "That the judgment is contrary to law." and "for other errors manifest on the face of the record." Counsel for appellant do not point out any errors or offer any suggestion as to the respect in which the judgment is contrary to law. The briefs of appellant and the appellees contain a history of the proceedings in question, references to various sections of the Ohio Constitution, references to various sections of the Conservancy Act, and repeat the desirability of a declaratory judgment.

While the action was pending in the Common Pleas Court, C. H. Whitman was made a party defendant at his own request and, appearing for himself and others, filed a motion to dismiss for want of jurisdiction over the subject-matter and on the ground that the questions were moot. This motion was overruled. Whitman's counsel represent to this court that shortly thereafter, without notice to them, the judgment of the Common Pleas Court was entered, this appeal was then perfected, and this cause submitted to this court. Upon such representation they were allowed to, and did, file briefs in this court.

Massillon's connection with the Muskingum Watershed Conservancy project has been a case of "off again, on again, gone again."

A part of the program of the Muskingum Watershed Conservancy District, as originally proposed, was a dam north of the city of Massillon and the straightening of the Tuscarawas River. This was abandoned upon the adoption of the official plan. Thereafter the official plan was amended to include river straightening in Massillon, and a very substantial sum of money was spent in preliminary work in connection with this amendment. This amendment was then eliminated from the official plan. Thereafter the appellant Finefrock, and his associates filed in the Common Pleas Court of Tuscarawas County a petition praying for the creation of a Massillon subdistrict of the Muskingum Watershed Conservancy District. So far as the record before us indicates that petition is now pending, with no bond having been filed, no hearings having been had by the Conservancy Court, and no action taken upon the petition.

That being the existing situation, Finefrock filed this action for a declaratory judgment in the Common Pleas Court of Stark County. The course of this action to date we have heretofore detailed.

In his petition this significant allegation appears: "Plaintiff further says that if the prayer of petition so filed by said petitioners is granted and the said subdistrict is formed, it is contemplated by said petitioners that an official plan will be established for said subdistrict and that certain assessments will be levied against properties located in said subdistrict, including the properties of the plaintiff as above set forth, in order to carry into effect and finance the improvements of said official plan."

The questions propounded in the petition and passed upon as heretofore indicated, are based upon the contingency of some action being taken by the district upon this petition, and raise questions as to: Exemptions under the Ohio Constitution as to tax levies for such a subdistrict; whether the official plan may be made to incorporate the elimination of grade crossings; whether bridge construction and grade elimination can be appraised as benefits to a political subdivision, or to utilities; whether assessments may in turn be levied against individual property affected; whether the question of the formation of a subdistrict may be submitted to a vote of the people; and whether the petitioners are bound to any plan for improvement in the event of the organization of the subdistrict.

This cause was submitted without oral argument. Upon a reading of the pleadings, questions at once arose in the mind of the court as to its jurisdiction, and as to the propriety of a declaratory judgment. These questions had been ignored in the original briefs. We were, therefore, glad to have counsel for Whitman present their ideas on these matters. They filed their brief, and to it a reply brief has been filed by appellant. To these questions we now direct attention.

The second paragraph of §6828-5, GC, a part of the Ohio Conservancy Act, is as follows:

"The Court of Common Pleas of the County in which the petition was filed shall thereafter, for all purposes of this act, except as hereinafter otherwise provided maintain and have original and exclusive jurisdiction co-extensive with the boundaries and limits of said district and of lands and other property proposed to be included in said district or affected by said district, without regard to the usual limits of its jurisdiction."

It seems to us beyond question that the matters suggested for consideration all pertain to "lands and other property proposed to be included in said district or affected by said district, * * *." This project in question is not a new or independent one. It is termed "subdistrict," and manifestly is such. While §6828-63, GC, provides for the organization of a subdistrict, it nowhere indicates that it shall be independent of the original district, and the very wording of this section seems to us to contemplate that it shall be treated as a part of the original district. There is nothing to indi-

cate that a different court shall take cognizance of the matter affecting this subdistrict. The section specifically provides that:

"The board of directors, board of appraisers, chief engineer, attorney, secretary and other officers, agents and employees of the district shall, so far as it may be necessary, serve in the same capacities for such subdistrict * * *."

It further provides that:

"The distribution of administrative expense between the main district and subdistrict shall be in proportion to the interests involved and the amount of service rendered, such division to be made by the board of directors with an appeal to the court establishing the district."

It seems to us clear from the very terms of this act that the Common Pleas Court of Tuscarawas County, and not the Common Pleas Court of Stark County, has jurisdiction over such questions as may arise from the filing of this petition for the subdistrict and from any proceedings that may be had thereon. It seems to us clear that the courts of Stark County have no jurisdiction at all in the premises. This conclusion might well terminate the whole question, but we deem it expedient to go further and discuss the propriety of a declaratory judgment as applied to the facts before us.

Sec 12102-2, GC, which is a part of the Uniform Declaratory Judgments Act, is in the following language:

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

We fail to see how the parties in the instant case bring themselves within the provisions of this section. There is not now in existence any statute, ordinance, contract or franchise affecting the appellant.

The subdistrict has not been created. It may never be created. It is possible that no official plan will ever be adopted. It would be a vain thing to pass upon the rights and liabilities of parties when it is not known, and cannot be known, whether the matter will ever progress far enough to affect them at all. We have heretofore quoted a part of appellant's petition. He predicates his prayer for relief upon the ground that if these things are done, he will be affected, and predicates it further upon a contemplation of the adoption of a plan.

Sec 12102-6, GC, is in the following language:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

Certainly, in view of the present status of this proposed subdistrict, any judgment rendered by any court would not terminate the uncertainty, or fix definitely the rights and liabilities of the appellant, or any other person concerned.

Borchard, in his work on Declaratory Judgments, page 40, says:

"The danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events—although it may involve future benefits or advantages—and the threat to his position must be actual and genuine and not merely possible or remote."

Again, on page 60, Borchard says:

"It is not a judicial function to pass upon questions not involved in an actual controversy concerning legal rights, an axiom which excludes from justiciability issues that are fictitious, colorable, or hypothetical."

It follows that the judgment of the Court of Common Pleas is set aside, and this cause is remanded to that court with instructions to dismiss the action.

Judgment reversed and cause remanded.

SHERICK and LEMERT, JJ, concur.